# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**NATIONAL LABOR RELATIONS BOARD,**

        Petitioner,

        v.

**ALLIED MEDICAL TRANSPORT, INC.**

        Respondent-Debtor,

**EXECUTIVE RIDE TRANSPORT, INC.**
**TRANSPORTATION SPECIALIST GROUP, INC.**
**EXECUTIVE RIDE GROUP, LLC**
**WAYNE ROWE, an individual,**

        Additional Respondent-Debtors,

        and

**SUNTRUST BANKS, INC.**
**JPMORGAN CHASE BANK, N.A.**

        Garnishees.

FILED BY ⟋ D.C.

JAN 15 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

Case No.

## NATIONAL LABOR RELATIONS BOARD'S
## *EX PARTE* APPLICATION FOR
## PREJUDGMENT WRIT OF GARNISHMENT,
## WRIT OF ATTACHMENT, AND
## PROTECTIVE RESTRAINING ORDER

The National Labor Relations Board ("the Board"), pursuant to the Federal Debt

Collection Procedures Act of 1990 ("FDCPA"), 28 U.S.C. §§ 3011, 3013, 3101, 3102 and 3104,

hereby applies for issuance of (i) a prejudgment Writ of Garnishment, (ii) a prejudgment Writ of

Attachment, and (iii) a Protective Restraining Order against the property of Respondent-Debtor

Allied Medical Transport, Inc. ("AMT"), and Additional Respondent Debtors Executive Ride

1

Transport, Inc. ("ERT"), Transportation Specialist Group, Inc. ("TSG"), Executive Ride Group, LLC ("ERG"), and Wayne Rowe (collectively, with AMT, "Respondent-Debtors"). This Application is supported by the Declaration of Chastity Pabon-Lockley, Compliance Officer of the Board's Region 12 (the "Region") located in Tampa, Florida.[1]

This Court has jurisdiction over this matter under 28 U.S.C. §1345. Further, 28 U.S.C. §3004(b) provides for nationwide service and enforcement of any writ, order, judgment, or process filed under the FDCPA.

## I. PARTIES

1.    The Board is an independent agency of the United States Government, as referenced in Section 3002(15)(B) of the FDCPA, 28 U.S.C. § 3002(15)(B). The Board has exclusive authority to prevent and remedy unfair labor practices as defined in the National Labor Relations Act, 29 U.S.C. § 151, et seq. (the "Act").

2.    Respondent-Debtor AMT is a business entity incorporated under the laws of Florida. Its most recently known address is 2170 Blount Rd., Pompano Beach, Florida, 33069.

3.    Additional Respondent-Debtor ERT is a business entity incorporated under the laws of Florida. Its most recently known address is 2170 Blount Rd., Pompano Beach, Florida, 33069.

4.    Additional Respondent-Debtor TSG is a business entity incorporated under the laws of Florida. Its most recently known address is 4139 Artesa Dr., Boynton Beach, Florida, 33436.

5.    Additional Respondent-Debtor ERG is a domestic limited liability corporation organized under the laws of Florida. Its most recently known address is 2170 Blount Rd., Pompano Beach, Florida, 33069.

---

[1]    References to the Declaration, which is attached as an Exhibit, will be as follows: Pabon-Lockley Declaration ¶ X.

2

6.     Additional Respondent-Debtor Wayne Rowe is an individual residing at 4139 Artesa Dr.,
Boynton Beach, Florida, 33436. Wayne Rowe is the owner of, beneficial owner of, and/or has
substantial control over AMT, ERT, TSG and ERG.

## II. FACTUAL BACKGROUND

### A. Underlying proceedings

7.     On July 2, 2014, the Board issued its decision and order ("Board Order") finding that
AMT unlawfully suspended and discharged two employees for engaging in union activity, in
violation of Section 8(a)(1) and (3) of the Act, 23 U.S.C. §158(a)(1) and (3). The Board Order
requires, among other things, AMT to offer reinstatement to the two discriminatees and make
them whole for any losses of pay. On October 13, 2015, the United States Court of Appeals for
the Eleventh Circuit issued its opinion granting enforcement of the Board Order in its entirety.
On December 7, 2015, the Eleventh Circuit issued its judgment affirming the October 13, 2015
opinion as the judgment of the Court ("Judgment") and issuing its mandate in the case.

### B. Compliance investigation

8.     On January 22, 2016, the Region issued a letter to Wayne Rowe, as the owner of AMT,
requesting that AMT comply with the Eleventh Circuit's October 13, 2015 Judgment, which
requires, among other things, that AMT offer reinstatement and pay backpay to the two
aforementioned discriminatees. [Pabon-Lockley Declaration ¶¶ 8-9]. On February 12, 2016, the
Board sent an e-mail to AMT at alliedmedicaltransport@yahoo.com requesting the same.
[Pabon-Lockley Declaration ¶ 9].

9.     Having received no response, the Region referred the matter to the Board's Contempt
Compliance and Special Litigation Branch ("CCSLB"). On April 19, 2016, CCSLB issued a
letter to AMT warning of the possible initiation of contempt proceedings if AMT fails to comply

with the Judgment and inviting AMT to provide additional evidence or legal argument relevant to its compliance with the Judgment. [Pabon-Lockley Declaration ¶ 10].

10.   Having received no additional evidence or legal argument in response to its initial letter, on May 3, 2016 CCSLB issued a subpoena duces tecum to "Wayne Rowe, Allied Medical Transport, Inc.," requiring him to respond to interrogatories and produce documents related to AMT's finances by May 17, 2016. [Pabon-Lockley Declaration ¶ 12]. On May 30, 2016, Mr. Rowe stated in an e-mail that he "could not find anyone to get the documents" and that he "was not the person in charge[] of those documents." [Pabon-Lockley Declaration ¶ 13]. Rowe did not reply to requests from CCSLB for the names and contact information of individuals who possessed any of the responsive documents. [Pabon-Lockley Declaration ¶ 13].

11.   On June 21, 2016, CCSLB issued a second subpoena to "Wayne Rowe, Allied Medical Transport, Inc.", directing him to respond by July 6, 2016, to interrogatories requesting the names, addresses, and phone numbers of any and all persons who have possession of documents pertaining to AMT's finances and business operations, an explanation for how these documents came into their possession, and, for any that have been destroyed, an explanation of the circumstances of such destruction. [Pabon-Lockley Declaration ¶ 14]. Having received no response, on July 26, 2016 CCSLB filed an application for subpoena enforcement in the U.S. District Court for the Southern District of Florida. [Pabon-Lockley Declaration ¶ 15].

12.   On August 4, 2016, the Southern District of Florida issued an order requiring Wayne Rowe to comply with the Board's subpoenas. [Pabon-Lockley Declaration ¶ 15]. To date, Wayne Rowe has failed to produce documents and answer interrogatories in compliance with the Southern District of Florida's August 4, 2016 order. [Pabon-Lockley Declaration ¶ 15].

4

13. Mr. Rowe has insisted that AMT ceased operations and had no assets with which to comply with the Eleventh Circuit's Judgment. [Pabon-Lockley Declaration ¶ 11].

14. Pursuant to its investigation into AMT's purported cessation of operations and claimed inability to comply with the Judgment, CCSLB subsequently issued third-party subpoenas to various business entities and financial institutions doing business with AMT. [Pabon-Lockley Declaration ¶¶ 16-17].

15. CCSLB also issued subpoenas requiring certain individuals to appear in person and to provide deposition testimony regarding AMT's finances and business operations. [Pabon-Lockley Declaration ¶¶ 18-29].

    a. On March 9, 2017, CCSLB conducted a deposition of Wayne Rowe.

    b. On March 10, 2017, CCSLB conducted a deposition of Diandre Hernandez, general manager of AMT from 2013 to the end of 2015.

    c. On June 20, 2018, CCSLB conducted a deposition of ERT president Penelope Pinheiro.

    d. On July 26, 2018, CCSLB conducted depositions of AMT president and owner, Rashelle Rowe; ERG president and former AMT employee Smith Petit; and ERT/ERG officer Fleurette Escarne.

16. As set out in greater detail below, the Board's investigation revealed evidence that AMT has continued in operation through its alter ego, single-integrated enterprise, and/or successor ERT, [Pabon-Lockley Declaration ¶¶ 57-61], and that AMT and ERT together have operated as a single integrated enterprise with TSG and ERG. [Pabon-Lockley Declaration ¶¶ 62-69]. As additionally shown below, the investigation revealed evidence establishing Wayne Rowe's

derivative liability for the debts of AMT owed under the Eleventh Circuit's Judgment. [Pabon-Lockley Declaration ¶¶ 70-83].

17. On January 8, 2020, the Region issued a Compliance Specification and Notice of Hearing ("Compliance Specification")[2] alleging the amounts owed under the Judgment and scheduling the matter for hearing before an administrative law judge beginning on April 14, 2020. [Pabon-Lockley Declaration ¶¶ 84-87; Exhibit 78]. The Compliance Specification also names and asserts that (1) ERT is jointly and severally liable for the Judgment debt as an alter ego, single integrated enterprise/single employer, and/or successor of AMT; (2) ERG is jointly and severally liable for the Judgment debt as an alter ego, single integrated enterprise/single employer of AMT and ERT; (3) TSG is jointly and severally liable for the Judgment debt as an alter ego, single integrated enterprise/single employer of AMT and ERT; (4) Wayne Rowe is derivatively liable for the Judgment debt, both personally and jointly, under the Act for failing to respect the separate corporate identities of AMT, ERT, TSG and ERG and for transferring corporate assets for personal use. [Pabon-Lockley Declaration ¶ 86, Exhibit 78].

### III. DERIVATIVE LIABILITY OF ADDITIONAL RESPONDENTS

#### A. Liability of additional respondent ERT

---

[2] Under the Board's procedures, both the amounts owed to remedy unfair labor practices pursuant to its Order, and the liability of any additional parties, are litigated in a separate compliance proceeding before an agency administrative law judge. The Board initiates a compliance proceeding by issuing to all concerned parties what is called a "Compliance Specification and Notice of Hearing" (essentially a complaint) alleging the amounts owed and the basis for liability of any additional parties, and setting the matter for hearing before an administrative law judge. See 29 C.F.R. §102.54-102.55. If contested, the decision of the administrative law judge is subject to review by the five-member Board, or a panel thereof, in Washington, D.C., and then by a United States Court of Appeals. *See* 29 U.S.C. § 160(e) and (f).

18.    The evidence obtained through the Board's compliance investigation shows that Wayne Rowe established another business, ERT, during the pendency of the enforcement litigation leading to the Eleventh Circuit Judgment, and that ERT was formally incorporated on October 9, 2015, a mere two weeks after AMT was dissolved on September 25, 2015 and immediately prior to the entry of the Judgment against AMT on October 13, 2015. [Pabon-Lockley Declaration ¶¶ 8, 30, 32, 45].

19.    The evidence demonstrates that ERT is an alter-ego of AMT and/or constitutes a single integrated enterprise/single employer with AMT, and as such, is jointly and severally liable with AMT to remedy the violations and comply with the Judgment under long-established NLRA principles. *See, e.g., NLRB v. Don Burgess Const. Corp.*, 596 F. 2d 378, 384 (9th Cir. 1979) (finding single employer status); *Haley & Haley Inc. v. NLRB*, 880 F.2d 1147, 1150 (9th Cir. 1989) (finding alter ego status); *NLRB v. O'Neill*, 965 F.2d 1522, 1529 (9th Cir. 1992) (finding alter-ego status). The Eleventh Circuit has adopted the NLRB's test for determining whether multiple entities are in fact so functionally integrated as to constitute a single employer/single integrated enterprise. This test examines a set of factors, including "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir.1987). The alter-ego test in the Eleventh Circuit relies on similar considerations, but additionally includes as a factor the presence of an unlawful motive or intent. *Rd. Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, n. 4 (11th Cir. 1994), citing *Penntech Papers, Inc. v. NLRB*, 706 F.2d 18, 24 (1st Cir.1983).

      a.    AMT and ERT have shared common ownership and/or control. [Pabon-Lockley Declaration ¶¶ 4, 34, 57].

7

    b.  AMT and ERT have shared common management. [Pabon-Lockley Declaration ¶¶ 4, 34, 58].

    c.  AMT and ERT have shared a common business purpose. [Pabon-Lockley Declaration ¶¶ 3, 32].

    d.  AMT and ERT have substantially interrelated operations, including:

        i.  Sharing common location [Pabon-Lockley Declaration ¶60(a)],

        ii.  Sharing common equipment [Pabon-Lockley Declaration ¶60(b)],

        iii.  Sharing common clients [Pabon-Lockley Declaration ¶60(c)],

        iv.  Sharing common employees [Pabon-Lockley Declaration ¶60(d)],

        v.  Sharing common contact information [Pabon-Lockley Declaration ¶60(e)],

        vi.  AMT and ERT were operated concurrently and interchangeably for a period of time in 2015 and 2016, with AMT continuing to engage in business after it was dissolved in September 2015. [Pabon-Lockley Declaration ¶ 60(f)].

        vii.  ERT paid debts incurred by AMT [Pabon-Lockley Declaration ¶60(g)(i)],

        viii.  ERT deposited checks made out to AMT into ERT's own bank accounts. [Pabon-Lockley Declaration ¶60(g)(ii)].

    e.  AMT and ERT share common control of labor relations. [Pabon-Lockley Declaration ¶¶ 59].

    f.  ERT was created with an unlawful motivation: an intent to evade AMT's obligations under federal law. [Pabon-Lockley Declaration ¶¶ 8, 30, 32, 45, 61].

20.   The Board's evidence also demonstrates that ERT is a successor of AMT and, as such, is jointly and severally liable with AMT to remedy the violations and comply with the Eleventh

Circuit's Judgment under established NLRA principles. *See Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 187 (1973); *Evans Servs., Inc. v. NLRB*, 810 F.2d 1089, 1092 (11th Cir. 1987).

    a.  There was continuity between ERT and AMT's operations. [Pabon-Lockley Declaration ¶ 60].

    b.  ERT was engaged in the same type of business as AMT. [Pabon-Lockley Declaration ¶¶ 3, 32].

    c.  ERT maintained the same management as AMT. [Pabon-Lockley Declaration ¶¶ 4, 34, 57, 58].

    d.  ERT maintained the same supervision as AMT. [Pabon-Lockley Declaration ¶¶ 57(c)-(d), 59].

    e.  ERT operated out of the same location, with the same contact information as AMT. [Pabon-Lockley Declaration ¶¶ 60(a), (e)].

    f.  ERT employed the same drivers as AMT by beginning its operation of the medical transportation business by hiring the same complement of drivers employed by AMT at the time AMT formally ceased operations. [Pabon-Lockley Declaration ¶ 60(d)].[3]

    g.  ERT used the same vehicles as AMT in its business. [Pabon-Lockley Declaration ¶ 60(b)].

---

[3] While ERT asserts that its medical transport drivers are independent contractors and not employees, the Board's investigation shows that ERT substantially controls the conditions of work for its drivers, and that they are therefore actually employees improperly classified as independent contractors. Moreover, the Board's investigation shows that Wayne Rowe instructed drivers for ERT to visit Rowe's business associate at SunTrust Bank, Karen Finley, to set up LLC's and business accounts in an attempt to complete the illusion of independent contractor status - in some instances threatening drivers with termination if they refused to agree to an independent contractor status.

h.  ERT relied on a Non-Emergency Medical Transportation Services license issued by Broward County to AMT to conduct business before ERT was properly licensed. [Pabon-Lockley Declaration ¶¶ 60(b)(iv)-(vi), 60(f)(iii)].

i.  ERT services the same customers as AMT. [Pabon-Lockley Declaration ¶ 60(c)].

j.  ERT used the same contractors as AMT and represented itself as AMT to those contractors after AMT was dissolved. [Pabon-Lockley Declaration ¶ 60(f)(ii)].

k.  ERT accepted and deposited checks made out to AMT for over a year following AMT's dissolution. [Pabon-Lockley Declaration ¶ 60(g)(ii)].

l.  ERT made payments on debts incurred by AMT. [Pabon-Lockley Declaration ¶ 60(g)(i)].

m.  Wayne Rowe had ownership and control over ERT [Pabon-Lockley Declaration ¶¶ 4, 34, 57), and had knowledge of AMT's liability to the Board before ERT took over AMT's operations [Pabon-Lockley Declaration ¶ 6].

**B. Liability of additional respondent TSG**

21.  The Board has reasonable cause to believe that Respondent TSG together with ERT and AMT, constitute a single employer/single integrated enterprise under Federal labor law, and are therefore jointly and severally liable for the backpay obligations under the Eleventh Circuit's Judgment against AMT.

22.  As mentioned earlier, the test for determining whether multiple entities are in fact so functionally integrated as to constitute a single employer/single integrated enterprise test, considers four factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987).

23.   Consideration of the above-listed factors weighs heavily in favor of finding TSG to be a single employer/single integrated enterprise with ERT and AMT.

    a.   TSG, ERT and AMT share common ownership and/or control by Wayne Rowe. [Pabon-Lockley Declaration ¶¶ 34, 40, 42, 44]. However, Wayne Rowe has concealed his ownership and control of ERT on publicly available documents. [Pabon-Lockley Declaration ¶¶ 47-51, 66(c)].

    b.   TSG, ERT, and AMT are commonly managed by Wayne Rowe. [Pabon-Lockley Declaration ¶¶ 4, 34, 63].

    c.   TSG and AMT's operations are substantially interrelated.

        i.   Until September 20, 2016 TSG owned the building at 2170 Blount Rd, from which ERT and AMT operated. [Pabon-Lockley Declaration ¶¶ 64(a)-(d), (e)(i), (f)(i)].

        ii.   In November and December 2014, AMT transferred at least $64,000.00 to TSG, which Wayne Rowe suggested was paid as rent for use of the facility. [Pabon-Lockley Declaration ¶ 64(e)(ii)].

        iii.   In 2014 and 2015, AMT paid $15,263.71 to creditors of TSG. [Pabon-Lockley Declaration ¶ 64(e)(iii)].

        iv.   In November 2015, AMT transferred 12 medical transport vans to TSG without adequate compensation. [Pabon-Lockley Declaration ¶ 64(e)(iv)].

    d.   TSG and ERT's operations are substantially interrelated.

        i.   From October 2016 to January 2017, after TSG no longer owned the Blount Rd. facility, ERT and TSG inexplicably transferred tens of thousands of dollars between their bank accounts. [Pabon-Lockley

Declaration ¶ 64(f)(iii)-(v)]. Mr. Rowe initially denied the transfers, and when later confronted with copies of the checks, failed to provide an adequate explanation. [Pabon-Lockley Declaration ¶ 64(f)(vii)].

ii.   In 2016, ERT transferred money from its own account to a third party on behalf of TSG. [Pabon-Lockley Declaration ¶ 64(f)(ii)].

iii.   In October 2017, ERT applied for a county permit for a van belonging to TSG. [Pabon-Lockley Declaration ¶ 64(f)(vi)].

e.   Because Respondent TSG does not have employees [Pabon-Lockley Declaration ¶ 65], the question of whether Respondents share centralized control of labor relations is accorded little if any weight in the single employer/single integrated enterprise analysis. *Morris Road Partners, LLC v. NLRB*, 637 Fed. Appx. 682, 685-6 (3rd Cir. 2016).

### C. Liability of additional respondent ERG

24.   The Board has reasonable cause to believe that Respondent ERG together with ERT and AMT, constitute a single employer/single integrated business enterprise under Federal labor law and are therefore jointly and severally liable for the backpay obligations under the Eleventh Circuit's Judgment against AMT.

25.   The following four factors are assessed in determining whether multiple entities are in fact so functionally integrated as to constitute a single employer/single integrated enterprise: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987).

26.   Consideration of the above-listed factors weighs heavily in favor of finding ERG to be a single employer/single integrated enterprise with ERT and AMT.

    a.   ERG, ERT, and AMT share common ownership and/or control by Wayne Rowe. [Pabon-Lockley Declaration ¶¶ 4, 34, 66]. However, Wayne Rowe has intentionally concealed his ownership and control of the entities on publicly available documents and in sworn testimony before a Board agent. [Pabon-Lockley Declaration ¶¶ 47-53, 55-56, 66].

    b.   ERG, ERT, and AMT are commonly managed by Wayne Rowe. [Pabon-Lockley Declaration ¶¶ 4, 67].

    c.   Respondents' operations are substantially interrelated

        i.   ERG was created for the purpose of holding real property for the benefit of ERT and Wayne Rowe, personally. [Pabon-Lockley Declaration ¶¶68(c)-(g), 83(a)(i), 83(a)(ii)(5)].

        ii.   In January 2017, ERT initiated a contract to purchase the Blount Rd. facility used by AMT and ERT's medical transportation business. [Pabon-Lockley Declaration ¶68(a)]. ERT later assigned the contract to ERG which accepted those obligations and completed the purchase of the facility. [Pabon-Lockley Declaration ¶68(c)-(g)].

        iii.   ERT provided $100,000.00 in January 2017 as a deposit for the purchase of the Blount Rd. facility, and upon information and belief, subsequently transferred the value of that deposit to ERG without compensation. [Pabon-Lockley Declaration ¶68(b), (d)].

      iv.    ERT transferred \$220,000.00 directly to ERG, which ERG then used as

             the down payment to complete the purchase of the Blount Rd. facility.

             [Pabon-Lockley Declaration ¶68(e), (f)].

      v.    ERG acquired ownership of Wayne Rowe's Artesa Drive residence.

             [Pabon-Lockley Declaration ¶83(a)(ii)(5)].

      vi.    ERG, ERT and AMT together made payments totaling over \$50,000.00 to

             pay mortgage debt for Wayne Rowe's Artesa Drive residence. [Pabon-

             Lockley Declaration ¶83(a)].

    d.  Because Respondent ERG does not have employees [Pabon-Lockley Declaration

       ¶69], the question of whether Respondents share centralized control of labor

       relations is accorded little if any weight in the single employer/single integrated

       enterprise analysis. *Morris Road Partners, LLC v. NLRB*, 637 Fed. Appx. 682,

       685-6 (3d Cir. 2016).

### D. Liability of additional respondent Wayne Rowe

27.    The Board's evidence demonstrates that it is appropriate to pierce the corporate veil of

AMT, ERT and ERG and hold Wayne Rowe derivatively liable, personally and jointly, to

remedy the violations and comply with the Board's Order under established Federal labor law

principles. *See White Oak Coal Co.*, 318 NLRB 732, 735 (1995), *enforced* 81 F.3d 150 (4th Cir.

1996); *NLRB v. West Dixie Enterprises, Inc.*, 190 F.3d 1191, 1194 (11th Cir. 1999) (affirming

district court's finding of personal liability where entity paid six months of rent for owner's

residence, the owner used personal checks or credit cards to pay for entity's supplies or payroll,

and the owner continued to operate the entity after it was administratively dissolved). Evidence

obtained during the Board's investigation shows that:

a. Wayne Rowe disregarded corporate formalities by continuing to operate AMT after it was administratively dissolved. [Pabon-Lockley Declaration ¶¶70-71].

b. Wayne Rowe disregarded corporate formalities by continuing to operate TSG after it was administratively dissolved. [Pabon-Lockley Declaration ¶¶72-73].

c. Wayne Rowe disregarded corporate formalities by disguising the continuance of AMT through ERT and operating the two entities concurrently and interchangeably. [Pabon-Lockley Declaration ¶ 60]

d. Wayne Rowe disregarded corporate formalities by disguising the continuance of AMT through ERT, naming individuals who are, in fact, unaffiliated with the business or its management as officers of the companies on public filings with the Florida Department of State. [Pabon-Lockley Declaration ¶¶ 44-51, 60].

e. Wayne Rowe disregarded corporate formalities by concealing the business activities of AMT/ERT through the formation of ERG by offering $6,000 to Smith Petit, a former employee of ERT, to fraudulently identify Petit as the president of ERG on corporate filings, and to fraudulently identify him as the owner of ERG on authorization documents necessary for ERG's purchase of real estate used by AMT/ERT's medical transportation business. [Pabon-Lockley Declaration ¶¶ 53, 79-80, 82].

f. Wayne Rowe failed to respect the distinct corporate identities of AMT, ERT, TSG and ERG, by transferring assets and funds amongst the four, by using funds from certain entities to pay debts incurred by the others, and by depositing checks payable to AMT into accounts owned by ERT and ERG after the Board Order had

issued against AMT. [Pabon-Lockley Declaration ¶¶ 60(b)(i)-(ii), 60(g) 64(e)(ii)-(iv), 64(f)(ii)-(v), 68(b), (d), (e), (j)].

g.   Wayne Rowe used the corporate assets of AMT, ERT and ERG to benefit his personal interests by making over $50,000.00 in mortgage payments to the lender for Wayne Rowe's Artesa Drive residence, by paying thousands of dollars in fees associated with Wayne Rowe's investment properties, and by making other non-business-related payments. [Pabon-Lockley Declaration ¶ 83].

h.   Wayne Rowe provided false and misleading statements while providing sworn testimony in order to conceal the purpose of these payments described in paragraph 26(g) above. [Pabon-Lockley Declaration ¶83(a)-(b)].

### E. Garnishees

28.   The Board's investigation has disclosed that the above captioned Garnishees either hold accounts owned by one or more of the Debtor-Respondents or have made payments and/or loans to AMT, ERT, TSG, ERG, or Wayne Rowe since the close of the administrative unfair labor practice hearing that led to issuance of the Board Order on July 2, 2014, and, on information and belief, have property or assets in which one or more of the Respondent-Debtors has a substantial non-exempt interest.

## IV. GROUNDS FOR PREJUDGMENT RELIEF

29.   The Board has reasonable cause to believe that AMT and Additional Respondents ERT, TSG, ERG, and Wayne Rowe, by and through their agents and representatives "ha[ve] or [are] about to assign, dispose, remove, conceal, ill-treat, waste, or destroy property" and/or "ha[ve] or [are] about to convert the debtor's property into money, securities, or evidence of debt in a

manner prejudicial to the United States", "with the effect of hindering, delaying, or defrauding the United States." (28 U.S.C. § 3101(b)(1)(B), (C)). To wit:

    a.  Wayne Rowe's creation of ERT as an alter ego, and ERG as a single integrated enterprise to hide AMT's continuation of operations as referenced in paragraphs 18-20 and 24-26 above, and the transfer of assets from AMT, ERT, and ERG for non-corporate purposes as referenced in paragraph 27 above, have resulted in the disposition or conversion of assets in a manner prejudicial to and with the effect of defrauding and/or frustrating and hindering the Board's compliance efforts and rendering any liquidated judgment that is ultimately entered in this matter unenforceable.

    b.  Wayne Rowe's deceitful business practices, the false and/or misleading statements he provided while under oath, and his intentional transfers of substantial funds from the corporate accounts of AMT, ERT, and ERG to pay for personal non-corporate expenses of Wayne Rowe demonstrate the likelihood that AMT, ERT, TSG, ERG and Wayne Rowe have and will further continue to conceal, dissipate, dispose or misuse remaining assets and/or funds, thereby frustrating the Board's compliance efforts and rendering any liquidated judgment that is eventually entered in this matter unenforceable. It is thus necessary and appropriate to provide pre-judgment relief in this matter, pursuant to 28 U.S.C. §§ 3101, et seq.

### V. REQUEST FOR PREJUDGMENT GARNISHMENT

30.  The Board reasonably believes that Respondent AMT and Additional Respondents ERT, TSG, ERG and Wayne Rowe have a substantial nonexempt interest in property that is in the

possession, custody, or control of Garnishees. [Pabon-Lockley Declaration ¶¶ 88-89]. In accordance with the FDCPA, 28 U.S.C. § 3104, these interests may be garnished on behalf of the Board, pending the final liquidation of amounts owed by AMT and/or the Additional Respondents.

31.    AMT and Additional Respondents shall be afforded an opportunity for a hearing, upon an appropriate request made pursuant to 28 U.S.C. § 3101(d).

32.    All statutory requirements for issuance of the prejudgment remedy set forth in 28 U.S.C. §§ 3101 and 3104 have been satisfied. No bond is required of the United States or its agencies (28 U.S.C. § 3101(c)(3)).

33.    As detailed in ¶ 85 of the Declaration of Pabon-Lockley the Board's monetary claim against AMT, ERT, TSG, ERG and Wayne Rowe is calculated as of January 10, 2020 to be approximately $146,828.42. The FDCPA authorizes an additional ten percent (10%) statutory surcharge. 28 U.S.C. § 3011. The Board is therefore seeking to garnish $161,511.26 through these prejudgment proceedings. Accordingly, the Board respectfully requests that this Court, pursuant to 28 U.S.C. § 3104, issue a pre-Judgment Writ of Garnishment against all property or monies of Respondent AMT and Additional Respondents ERT, TSG, ERG, and Wayne Rowe held by Garnishees in a total amount not to exceed $161,511.26.

## VI. REQUEST FOR PREJUDGMENT ATTACHMENT

i.    The Board has identified two properties owned by Respondent ERG: a commercial property located at 2170 Blount Rd. in Pompano Beach, Florida, [Pabon-Lockley Declaration ¶ 68(g)] and residential property located at 4139 Artesa Dr. in Boynton Beach, Florida. [Pabon-Lockley Declaration ¶ 83(a)(ii)].

18

ii.       The Board has identified two properties jointly owned by Respondent Wayne Rowe with his daughter and president of AMT, Rashelle Rowe: residential condominium units located at 95 NE 41st St. #169L, and 101 NE 41st St. #32B, both in Oakland Park, Florida. [Pabon-Lockley Declaration ¶ 83(c)].

iii.      Accordingly, the Board respectfully requests that this Court, pursuant to 28 U.S.C. § 3102, issue a pre-Judgment Writ of Attachment against the Blount Rd. and Artesa Dr. properties owned by ERG, referenced in paragraph 34, above, and the two condominium units owned by Wayne Rowe, referenced in paragraph 35, above, not to exceed $161,511.26. Should the value of the combined equity in the properties in addition to the funds garnished under the Writ of Garnishment and the funds held by the Board in a fiduciary account pursuant to the Protective Restraining Order exceed $161,511.26, the Respondents may move to adjust the writ of attachment, as provided for in the FDCPA, 28 U.S.C. § 3102(g).

## VII.    REQUEST FOR PREJUDGMENT PROTECTIVE RESTRAINING ORDER

i.        The Board seeks additional relief, in the form of a Protective Restraining Order pursuant to FDCPA 28 U.S. C. § 3013, against AMT and Additional Respondents ERT, TSG, ERG and Wayne Rowe to the extent that the property subject to garnishment through this proceeding (as well as any other property that the Board may subsequently discover and successfully execute upon or garnish) do not result in sufficient funds to satisfy the Board's monetary claim. Thus, the Board seeks a Protective Restraining Order to supplement the Writ of Garnishment and to ensure its ability to obtain from AMT and Additional Respondent-Debtors full compliance with monetary obligations pursuant to an eventual liquidated judgment.

ii.       It is the Board's view that, in light of the past conduct of Wayne Rowe and corporate Respondent Debtors AMT, ERT, TSG, and ERG, designed to avoid satisfying their monetary

19

liability to the Board, there is a substantial likelihood that Respondent's past violations of the Act will go unremedied because their assets will be further concealed, dissipated, disposed of or misused, so as to substantially impede the Board's efforts and ability to obtain Respondent's compliance with the remedial provisions of the Board's Order in this matter. It is therefore essential that a Protective Restraining Order be granted to preserve and identify assets that have been or which may be improperly transferred, concealed and/or dissipated by AMT and Additional Respondents ERT, TSG, ERG, and Wayne Rowe, to ensure the Board's ability to obtain full compliance with the Board Order.

iii.      Accordingly, the Board respectfully requests that this Court, pursuant to 28 U.S.C. § 3013, issue a Protective Restraining Order, requiring AMT and Additional Respondents to provide a list of their assets to the Board, and otherwise restraining AMT and Additional Respondents ERT, TSG, ERG, and Wayne Rowe from assigning, disposing, removing, and/or concealing assets, unless and until $161,511.26 is transferred to the Board for placement into a fiduciary account with the U.S. Department of Treasury, subject to modification and proper set off upon the receipt of any funds garnished pursuant to the requested Writ of Garnishment, to be held in such account until such time as the Board's liquidated claim is enforced by a court judgment, or the parties mutually resolve by settlement the total amounts owed by Respondents. Notwithstanding such proscriptions, the Protective Restraining Order would allow Respondents to expend funds on reasonably necessary expenses, so as not to unduly burden them. In this fashion, the Board's ability to obtain compliance with the Board Order will be ensured, while at the same time ensuring that there will be no unreasonable impediment to the use, assignment, disposal, removal, and/or sale of any of property belonging to Respondents.

20

**WHEREFORE**, pursuant to 28 U.S.C. §§ 3013, 3101, 3102 and 3104, the Board respectfully applies for issuance of: (i) the proposed Writ of Garnishment, (ii) the proposed Writ of Attachment, and (iii) the proposed Protective Restraining Order.

A proposed Writ of Garnishment, proposed Writ of Attachment, and a proposed Protective Restraining Order are submitted herewith.

Under penalty of perjury, the allegations set forth in this Application are true and correct to the best of my knowledge, information and belief.

Respectfully submitted,

NATIONAL LABOR RELATIONS BOARD

Aaron D. Samsel
Trial Attorney
(202) 273-3839
Aaron.Samsel@nlrb.gov

David Boehm
Trial Attorney
(202) 273-4202
David.Boehm@nlrb.gov

David Mori
Supervisory Trial Attorney
(202) 273-3743
David.Mori@nlrb.gov
Contempt, Compliance and Special Litigation Branch
1015 Half Street S.E., Fourth Floor
Washington, D.C. 20003

Dated at Washington, District of Columbia
this 10 day of January 2020.

21